— FOR PUBLICATION —

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>STEPHEN DEITCH,<br>                Debtor.<br><br>STEPHEN DEITCH,<br>                Appellant,<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br>                Appellee. | CIVIL ACTION<br><br>NO. 15-204<br><br><br>BANKRUPTCY<br><br>NO. 13-10121 |

## OPINION

### I.    INTRODUCTION

Appellant Stephen Deitch (the "Debtor") brings this appeal of an order by the U.S. Bankruptcy Court for the Eastern District of Pennsylvania denying his Objection to a Proof of Claim filed by Appellee Federal National Mortgage Association ("Fannie Mae"). *In re Deitch*, 522 B.R. 99, 103 (Bankr. E.D. Pa. 2014) [Bankr. No. 13-10121, Docket No. 177]. Fannie Mae's Proof of Claim cites a default judgment on the Debtor's mortgage loan, as granted by the Court of Common Pleas for Philadelphia County. The Debtor filed an Objection, claiming that he has a right to rescind the mortgage based on the original lender's violations of the Door to Door Sales provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). After consideration of several rounds of briefing and oral argument, the Bankruptcy Court denied the Objection. The Debtor raises several issues on appeal in arguing that the Bankruptcy Court's decision to deny the Objection is incorrect. Fannie Mae raises

several issues of its own in response, chief among them for the purposes of this Opinion that this Court lacks subject matter jurisdiction because the *Rooker–Feldman* doctrine precludes the federal courts from determining the validity of the Debtor's claim of right to rescission.

For the reasons that follow, the Court concludes that pursuant to the *Rooker–Feldman* doctrine the federal courts have no subject matter jurisdiction over the Debtor's Objection, and thus the December 3, 2014, order of the Bankruptcy Court will be vacated.

## II.     BACKGROUND

The relevant facts here are not in dispute. *See* Hr'g Tr. at 3. On April 25, 2007, Stephen Deitch (the "Debtor") obtained a mortgage loan from MAS Associates, LLC, d/b/a Equity Mortgage Lending, LLC ("MAS"). Stipulation of Facts for the Motion Requesting Reconsideration of the Order of March 12, 2014, Denying His Objections to the Proof of Claim Filed by Federal National Mortgage Association (Fannie Mae), Creditor c/o Seterus, Inc. (hereinafter "Stip.") ¶ 1. The loan is secured by the Debtor's principal residence. MAS provided the Debtor a "Notice of Right to Cancel," which the Debtor and his wife both signed, acknowledging that they received two copies of the Notice and one copy of the Federal Truth in Lending Disclosure Statement. *Id.* ¶¶ 7-8. On that same day, MAS assigned the mortgage to GreenPoint Mortgage Funding, Inc. ("GreenPoint"). *Id.* ¶ 4. And on February 16, 2011, GreenPoint assigned the mortgage to Federal National Mortgage Association ("Fannie Mae"). *Id.* ¶ 5.

On March 31, 2011, Fannie Mae, the Appellee here, filed a complaint in the Court of Common Pleas of Philadelphia County. *Id.* ¶ 9. On May 10, 2011, the Debtor filed an Answer with New Matter alleging that Fannie Mae violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq.*, and the Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat. § 2270.1 *et seq. See id.* ¶ 10. In August 2012, Fannie Mae obtained a judgment in mortgage foreclosure against the Debtor and his wife. *Id.* ¶ 16.

2

On January 7, 2013, the Debtor filed this bankruptcy proceeding. Ten days later, he sent a letter in an attempt to rescind the April 25, 2007, loan transaction. *Id.* ¶ 17. On August 28, 2013, Fannie Mae responded to the rescission request by rejecting it and advising that "the owner of the loan is not accepting offers to satisfy the lien for less than the contractual balance owed." *Id.* ¶ 18.

In the interim, on June 20, 2013, Fannie Mae filed a Proof of Claim in the bankruptcy proceeding in the amount of $226,330.52, based on a default of the mortgage loan. *In re Deitch*, 522 B.R. at 103. The Debtor objected to the claim and asserted the right to rescind the loan, arguing that because he was never given notice of a right to rescind under the Door to Door Sales provision of the UTPCPL, he could rescind the loan now, even though it had been made eight years before. On October 8, 2013, Fannie Mae filed a response to the Objection, denying the allegation that a proper notice of rescission was given. The Bankruptcy Court held a hearing on the Objection on December 4, 2013.

Over the course of the next year, through briefing and oral argument, the Debtor argued that he may rescind his loan and that the original lender was required to give him oral notice of the right to cancel in addition to written notice. Fannie Mae argued that the Debtor's Objection was precluded by res judicata based on the state court foreclosure judgment. It also argued that: (1) the Debtor was given the required notice of the right to cancel the loan; (2) the law on which the Debtor relies is not applicable; and (3) Fannie Mae is not liable for any violation of the law because it purchased the loan in good faith. *In re Deitch*, 522 B.R. at 101-02.

In its order of December 3, 2014, the Bankruptcy Court identified four issues for determination:

(1) Is the basis of the Debtor's Objection precluded by res judicata?
(2) Is the Debtor's mortgage loan the type of transaction covered by the Pennsylvania Door to Door Sales Law, 73 Pa. Cons. Stat. § 201-7?

(3) If it is, then was the Debtor given the requisite notice of the right to rescind as required by that law?

(4) If the original lender violated the Door to Door Sales Law, does Fannie Mae enjoy the protection of a good faith assignee?

*Id.* at 102. Based on its analysis, the court came to four conclusions. First, the Objection was not precluded by res judicata because a consumer protection claim based on state law is an *in personam* proceeding, which could not be brought in response to a foreclosure, which itself is a proceeding *in rem*. *Id.* at 103-04. Second, the transaction was covered under the Door to Door Sales Law, 73 Pa. Cons. Stat. § 201-1 *et seq.*, because material contacts to effectuate the transaction were made upon the Debtor at his home. *Id.* at 104-05. Third, the Debtor was given requisite notice because the requirements of the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), preempted the requirements of the Door to Door Sales Law on this point; and oral notice was not required because the requirement of oral notice was expressly written out of the Door to Door Sales Law before it was enacted. *Id.* at 106-12. And fourth, Fannie Mae is not liable under the UTPCPL because the Debtor has neither alleged nor proven that Fannie Mae *itself* committed any violation of the law. *See id.* at 112. The Bankruptcy Court did not address subject matter jurisdiction under the *Rooker–Feldman* doctrine in its order. It appears to this Court, on a review of the parties' submissions, that it was not an issue raised by the parties.

This appeal followed. The appeal ripened on March 16, 2015, and oral argument was held on May 8, 2015.

## III. DISCUSSION

### A. *Standard of Review*

This Court has jurisdiction over appeals from final judgments, orders, and decrees of the Bankruptcy Court under 28 U.S.C. § 158(a)(1). This appeal is from an order denying the Debtor's Objection to Fannie Mae's proof of claim, and it is a final order. This Court reviews "the

4

bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof." *Interface Grp.-Nev., Inc. v. Trans World Airlines, Inc.* (*In re Trans World Airlines, Inc.*), 145 F.3d 124, 131 (3d Cir. 1998).

Fannie Mae advances two rationales as to why this Court cannot hear these claims—lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine and res judicata. *See* Appellee Br. at 11-15. In his brief, the Debtor contends that Fannie Mae's failure to cross-appeal to argue these issues "conclusively resolve[s]" them in his favor. Appellant Br. at 10. The Debtor is incorrect. As stated above, this court reviews de novo the Bankruptcy Court's legal conclusion that res judicata does not apply. And because the *Rooker–Feldman* doctrine, if applicable, divests the federal courts of subject matter jurisdiction, a party may raise the doctrine at any time and the Court may raise it *sua sponte*, even on appeal. *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also of the lower courts in a case under review." (citation and internal quotation marks omitted)); *Mansfield, C. & L.M.R. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884) (stating that a challenge to a federal court's subject matter jurisdiction may be made at any stage of the proceedings, and the court should raise the question *sua sponte*).

**B.     Rooker–Feldman** *Doctrine*

"In certain circumstances, where a federal suit follows a state suit, the *Rooker–Feldman* doctrine prohibits the district court from exercising jurisdiction." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163-64 (3d Cir. 2010). The doctrine, named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "is confined to cases of the kind from which the doctrine acquired

its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "*Rooker* and *Feldman* exhibit the limited circumstances in which [the Supreme Court's] appellate jurisdiction over state-court judgments precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Id.* at 291 (citation omitted).

In determining whether the *Rooker–Feldman* doctrine operates to bar subject matter jurisdiction here, one Third Circuit case, *Madera v. Ameriquest Mortgage Co.* (*In re Madera*), 586 F.3d 228 (3d Cir. 2009), is particularly applicable. There, the debtors, a husband and wife, defaulted on their mortgage. The assignee of the loan initiated foreclosure proceedings in the Court of Common Pleas of Bucks County in March 2006. Two months later, the Court of Common Pleas entered a default foreclosure judgment against them, and the debtors filed for Chapter 13 bankruptcy protection on July 19, 2006. They sought rescission of the mortgage, alleging that the lender failed to accurately disclose the terms of the loan as required under the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* Both the bankruptcy court and the district court concluded that they lacked subject matter jurisdiction under the *Rooker–Feldman* doctrine to hear the debtors' claims seeking rescission. *Id.* at 230-32.

The Third Circuit affirmed. The court relied on the standard it had previously set forth in *Knapper v. Bankers Trust Co.* (*In re Knapper*), 407 F.3d 573 (3d Cir. 2005), that a claim is barred by *Rooker–Feldman* if: (1) "the federal claim was actually litigated in state court prior to the filing of the federal action," or (2) "the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state

6

court was wrong." *In re Madera*, 586 F.3d at 232 (quoting *In re Knapper*, 407 F.3d at 580, 581) (internal quotation marks omitted). The court also relied on *Knapper*'s definition that a federal claim is "inextricably intertwined" with an issue adjudicated by a state court when: "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the request relief, or (2) the federal court must take an action that would negate the state court's judgment." *Id.* (quoting *In re Knapper*, 407 F.3d at 580, 581) (internal quotation marks omitted). Based on this, the court agreed with the lower courts that "granting rescission would amount to finding that no valid mortgage existed, which would negate the foreclosure judgment, as a mortgage foreclosure action depends upon the existence of a valid mortgage." *Id.* (citation and internal quotation marks omitted). Furthermore, the court determined that "a favorable decision for the [debtors] in the federal courts would prevent the Court of Common Pleas from enforcing its order to foreclose the mortgage." *Id.* (citing *In re Knapper*, 407 F.3d at 581 ("*Rooker–Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders.")). Thus, *Rooker–Feldman* applied and deprived the federal courts of subject matter jurisdiction.

The facts of *Madera* are directly in line with the facts of the Debtor's objection here. Both cases involve the granting of a foreclosure judgment in Pennsylvania state court against the debtor based on a defaulted mortgage, a subsequent bankruptcy filing, and a claim for rescission by the debtor during the course of the bankruptcy proceedings. Although the debtors in *Madera* brought their rescission claim under TILA, while the Debtor here brings his rescission claim under the Pennsylvania UTPCPL, the result of a grant of rescission is identical in both cases, *i.e.*, what amounts to a "finding that no valid mortgage existed, which would negate the foreclosure judgment." *In re Madera*, 586 F.3d at 232.

7

Subsequent to *Madera*, the Third Circuit, in *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010), questioned the propriety of the "inextricably intertwined" test used in *Madera* and other *Rooker–Feldman* doctrine cases in this Circuit. The court's questioning came in the wake of the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Industry Corp.*, 544 U.S. 280, 284 (2005), in which it held that the *Rooker–Feldman* doctrine requires satisfaction of four elements: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining*, 615 F.3d at 166 (quoting *Exxon Mobil*, 544 U.S. at 284) (internal quotation marks omitted). The Third Circuit in *Great Western Mining* recognized that the Supreme Court in *Exxon Mobil* "deliberately did not rely on [the 'inextricably intertwined'] formulation in its jurisdictional analysis, instead employing the four-part inquiry that we have outlined above." *Id.* at 169 (citing *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006) ("In *Exxon*, the Supreme Court implicitly repudiated the circuits' post-*Feldman* use of the phrase 'inextricably intertwined' to extend *Rooker–Feldman* to situations where the source of the injury was not the state court judgment.")).

While this discussion seems, on its face, like a harbinger of doom for *Madera*, the Third Circuit specifically addressed that the repudiation of the "inextricably intertwined" formulation of the doctrine ultimately had no effect on the precedential value of that case. The court noted that the *Great Western Mining* defendants had cited to cases (including *Madera*) in which, post–*Exxon Mobil*, the court had relied upon their pre–*Exxon Mobil* formulation of the *Rooker–Feldman* doctrine, *i.e.*, the "inextricably intertwined" test. The court wrote, "Although we cited our pre–*Exxon Mobil* definition of 'inextricably intertwined,' at bottom, the holdings in these

8

cases rested on the same concerns at issue in *Exxon Mobil*—whether the plaintiff's claim complains of an injury caused by a state-court judgment rendered before the federal proceeding and seeks review and rejection of that judgment." *Great Western Mining*, 615 F.3d at 170 n.4. The court continued, stating that in *Madera* and *Knapper* it had held that *Rooker–Feldman* barred suit because a favorable decision in federal court would require negating or reversing the state court decision, "describ[ing] the state and federal suits as 'inextricably intertwined,' using this phrase as a shorthand for the concept that the plaintiff could not 'prevail on her federal claim without obtaining an order that would negate the state court[s'] judgment[s]." *Id.* (quoting *In re Knapper*, 407 F.3d at 581) (alterations in original) (internal citation and quotations marks omitted). The court realized that, going forward, it "should exercise 'caution . . . in relying on our pre-*Exxon* formulation of the *Rooker–Feldman* doctrine,'" but it concluded that both *Madera* and *Knapper* "**are consistent with *Exxon Mobil* and with the approach we adopt today**." *Id.* (emphasis added).

Three months after *Great Western Mining* was decided, a panel of the Third Circuit ruled that "[**a**]**ny** claim relying on allegations of wrongful foreclosure must be rejected under the *Rooker–Feldman* doctrine." *Laychock v. Wells Fargo Home Mortg.*, 399 F. App'x 716, 718 (3d Cir. 2010) (emphasis added); *see also Stewart v. Chase Bank*, No. 12-1243, 2013 WL 4041963, at \*9 (W.D. Pa. Aug. 8, 2013) (holding, in a case with facts "almost identical" to *Madera*'s, that neither the district court nor the bankruptcy court had subject matter jurisdiction under *Rooker–Feldman* to grant the rescission requested by the debtors); *accord Bowen v. Bank of Am., N.A.*, No. 14-3539, 2015 WL 1968974, at \*5 (D.N.J. Apr. 30, 2015); *Perkins v. Beltway Capital, LLC*, 773 F. Supp. 2d 553, 559 (E.D. Pa. 2011).

So to summarize, *Madera* held that the *Rooker–Feldman* doctrine deprived the federal courts of subject matter jurisdiction when a debtor attempted to bring a rescission claim in federal

9

bankruptcy proceedings subsequent to losing a foreclosure judgment in state court. At oral argument, counsel for the Debtor—who, incidentally, served as the debtor's counsel in *Madera*—contended at oral argument that *Madera* was "wrongly decided," but advanced little in support of that contention other than the fact that *Great Western Mining* was decided after *Madera*—and essentially conceded that he could not justifiably distinguish *Madera* from the instant case on its facts. *See* Hr'g Tr. at 20-21. Although the Third Circuit did acknowledge in *Great Western Mining* that it had used a pre–*Exxon Mobil* formulation of the *Rooker–Feldman* doctrine in coming to its conclusion in *Madera*, the court nevertheless ratified *Madera* as consistent with the formulation of *Rooker–Feldman* found in both *Exxon Mobil* and *Great Western Mining* itself. As a result, in this appeal, arising from facts directly analogous to those at issue in *Madera*, the Court is bound by the Third Circuit's rulings and thus concludes that it has no subject matter jurisdiction to rule on the Debtor's Objection because the *Rooker–Feldman* doctrine operates to bar the Debtor's claim of rescission.

Based on the foregoing, the Bankruptcy Court's order of December 3, 2014, is **VACATED** and this matter shall be **REMANDED** to the Bankruptcy Court with instructions to dismiss the Debtor's Objection for lack of subject matter jurisdiction.

An appropriate Order follows.

Dated: **June 15, 2015**

        **BY THE COURT:**

        **/S/WENDY BEETLESTONE, J.**

        _____

        **WENDY BEETLESTONE, J.**